# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PATRICK C. LYNN,

    **Plaintiff,**

    v.                          CASE NO. 19-3003-EFM

SAMMY CLINE, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights Complaint pursuant to 42 U.S.C. § 1983. Plaintiff has paid the filing fee in full. Plaintiff is currently incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). On November 13, 2019, the Court entered an Order to Show Cause (Doc. 42), ordering Plaintiff to show good cause why this action should not be dismissed without prejudice under Fed. R. Civ. P. 41(b) for failure to prosecute or to comply with Court orders. The Order to Show Cause found that Plaintiff failed to file an amended complaint by the Court's deadline. Plaintiff has now filed a First Amended Complaint (Doc. 48) ("FAC"), and this matter is before the Court for screening Plaintiff's FAC.

## I. Nature of the Matter before the Court

Plaintiff alleges in his FAC that he was transferred to HCF on January 23, 2019, and although he is handicapped, he was placed in a non-handicap segregation cell. (Doc. 48, at 2.) Plaintiff alleges that about thirty minutes after he was placed in HCF segregation, Unit Manager Nickles told Plaintiff he did not look well, and he summoned RN Martha Miller to come examine Plaintiff. She took Plaintiff's blood pressure and it was 150/80 or 90. *Id*. at 13. Although Plaintiff's normal blood pressure is 90/60, RN Miller ignored or refused to comply

with chest pains protocol established by Corizon and told the guard to return Plaintiff to his cell. *Id.*

Plaintiff alleges that on January 24, 2019, from around 9 a.m. to after 3 p.m., he had to take multiple Nitro tabs and he declared a medical emergency due to chest pains. Plaintiff alleges that he said he was having a heart attack and needed to get to a hospital because he was struggling to breathe. Plaintiff alleges that he asked the following defendants to call a nurse: CO1 Jessica Zager; CO1 Thomas Jackson; CO1 Richard Golden; CO1 Russell Cook; CO1 Douglas Sherwood; Mental Health Supervisor Misty Keolavone; Mental Health Counselors Kevin Stansbury and Karla Schroeder; and Med Tech Wendy Wasinger. Plaintiff alleges that each of these defendants refused to use their radio to call a medical emergency code and declared they were not allowed to do so and would pass it on to "JRW." Plaintiff was repeatedly told by segregation staff that they notified "JRW" and he forbid them (Zager, Jackson, Golden, Cook and Sherwood) from calling a radio medical emergency or to telephone medical.

Plaintiff alleges that his symptoms he began suffering at 9 a.m. "morphed into a full-on debilitating OMG hear attack around 1 p.m." (Doc. 48, at 9.) Several time during the 7 to 3 shift, JRW passed by Plaintiff's cell without assisting Plaintiff. Plaintiff was told by medical staff that they passed on Plaintiff's medical emergency to JRW and the shift commanders Price and Kipp. Plaintiff was later told that they had done so, but Price and Kipp refused to investigate.

Plaintiff alleges that shortly after the 3 p.m. shift change, the incoming staff made immediate moves to call a code and assess Plaintiff. Plaintiff was taken to the clinic for further treatment and the decision was made to call an ambulance and transport Plaintiff to the hospital. Plaintiff alleges that he was denied pain medication while waiting to be transported to the

hospital, and only received pain medication once he was inside the ambulance and again at the hospital. *Id*. at 11. Plaintiff alleges that he was taken to the hospital, it was determined that he had suffered a heart attack, and he was admitted to the ICU. *Id*. at 9.

Plaintiff alleges that after he was released from the hospital and returned to segregation at HCF and was subjected to "provocative taunts & caustic comments" by JRW. Plaintiff was told by staff that they were forbidden by JRW to call an emergency for Plaintiff. Plaintiff made written complaints and requests for investigation, but received no written replies. Plaintiff states that JRW was rotated out of the segregation unit. Plaintiff alleges that he thereafter made several injury claims through the administrative remedy procedures and received "zero responses." *Id*. at 10.

Plaintiff makes several claims regarding incidents involving other inmates. Plaintiff alleges that JRW "corruptly" seized another inmate's meal tray on January 5, 202, resulting in a confrontation and "Beatup Squad." *Id*. at 10. Plaintiff also alleges that another inmate was subjected to an unlawful body cavity search during September or October of 2019. *Id*. at 12. Plaintiff alleges that on January 24, 2019, a commotion outside his cell door woke him up, and Plaintiff was struggling to breathe and was choking on "excessive chemical munitions." Plaintiff alleges that about 15 guards in riot gear and gas masks were at the "strip-out/decontamination cell" next to Plaintiff. Plaintiff and other inmates in the vicinity were choking on the excess fumes and the wall fan in the area did not work and the window would not stay open. Plaintiff alleges that this "commotion event" outside his cell was another corrupt abuse of authority situation created by Defendant Rodriguez-Wilkerson to incite the HCF "SST-Beat-up Squad" to use excessive force. Plaintiff alleges that the crew beat another inmate. Plaintiff pleaded for staff to get medical help for the other inmate. Plaintiff continued struggling to breathe, and

pleaded to be taken to an outside segregation recreation cage. Plaintiff's requests were denied, and segregation staff told Plaintiff "JRW" said no.

Plaintiff alleges in Count I that Defendants violated his Eighth Amendment rights by demonstrating deliberate indifference to his serious medical condition and needs. Plaintiff alleges in Count II that Defendants' "customs and practices" of criminal and unconstitutional abuses demonstrates an entrenched culture constituting a policy of denying constitutional rights in the KDOC and particularly at HCF. Plaintiff alleges that these customs and practices violated his Eighth Amendment rights. Plaintiff alleges in Count III that his Eighth Amendment rights have been violated by state and federal officials refusing to act upon the hideous criminal and unconstitutional acts of prison medical staff through the KDOC and particularly at HCF. Plaintiff seeks to have the Kansas U.S. Attorney and the FBI investigate and present their findings to the grand jury per 18 U.S.C. § 3332(a).

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court

liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*,

561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Standing

Plaintiff makes several claims regarding incidents involving other inmates or claims on behalf of the inmate population in general. It is well-settled that a § 1983 claim must be based on the violation of Plaintiff's personal rights and not the rights of someone else. *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (citations omitted). To the extent Plaintiff raises claims on behalf of others, a review of the allegations contained in his FAC indicates he lacks standing to do so. To have standing, a prisoner must state "specific facts connecting the allegedly unconstitutional conditions with his own experiences [in the prison], or indicat[e] how the conditions caused him injury." *Swoboda v. Dubach,* 992 F.2d 286, 289 (10th Cir. 1993). "[G]eneral observations" about prison conditions are not actionable under 42 U.S.C. § 1983. *Id.* at 289–90.

Such general grievances are best addressed to the legislative, not the judicial, branch. *Bd. of Cty. Comm'rs of Sweetwater Cty. v. Geringer,* 297 F.3d 1108, 1112 (10th Cir. 2002) (citing

*Allen v. Wright,* 468 U.S. 737, 751 (1984)). Such claims should be dismissed for lack of prudential standing. *See, e.g., Whitington v. Ortiz,* 307 F. App'x 179, 191 (10th Cir. 2009) *(pro se* prisoner plaintiff "lack[ed] standing to attempt to re-regulate the entire CDOC system, or to sue directly or indirectly on behalf of anyone but himself"); *Martinez v. Mesa Cty. Sheriff's Dep't,* 69 F.3d 548 (Table), 1995 WL 640293 at *1 (10th Cir. 1995) (unpublished) (court is not empowered to decide "generalized grievances concerning prison management").

### 2. Request for Grand Jury

Plaintiff seeks to have the Kansas U.S. Attorney and the FBI investigate and present their findings to the grand jury per 18 U.S.C. § 3332(a). The Court has previously denied Plaintiff's request for referral to a Federal Grand Jury and request for an order compelling the Kansas U.S. Attorney to present Plaintiff and other victims before a Grand Jury under 18 U.S.C. § 3332. *See* Doc. 15, at 13–14. The Court denies Plaintiff's current request for the same reasons set forth in this Court's May 7, 2019 Memorandum and Order. *Id*.

### 3. Medical Care

Plaintiff alleges that Defendant Jeremy Rodriguez-Wilkerson prevented Plaintiff from receiving proper medical care on January 24, 2019. Plaintiff alleges that medical treatment for his heart attack symptoms was delayed due to Defendant Jeremy Rodriguez-Wilkerson's refusal to allow Plaintiff to seek help from medical providers and his actions in preventing other staff from calling for medical help.

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

"A prison medical professional who serves 'solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'" *Id.* (citing *Sealock,* 218 F.3d at 1211; *see also Estelle,* 429 U.S. at 104–105, 97 S. Ct. 285 (deliberate indifference is manifested by prison personnel "in intentionally denying or delaying access to medical care")).

The Court finds that the proper processing of Plaintiff's medical claim cannot be achieved without additional information from appropriate officials of HCF. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate officials of HCF to prepare and file a *Martinez* Report. The *Martinez* Report shall be limited to the issue of Plaintiff's medical care on January 24, 2019, and any delay in receiving medical care on that date. Once the report has been received, the Court can properly screen Plaintiff's medical claim under 28 U.S.C. § 1915. Plaintiff is cautioned that no answer or motion addressed to the FAC shall be filed until the *Martinez* Report required herein has been prepared.

**IV. Motions**

Plaintiff filed a Motion for Caption Change (Doc. 49), asking the Court to change the caption of this case based on his FAC. The Court does not change the caption based on amended complaints, however the Court's docket reflects any defendants that are added in an amended complaint and terminates any defendants that are not named in an amended complaint. Therefore, the docket in this case correctly reflects the current parties. Plaintiff's motion is denied.

Plaintiff also filed an "Affidavit" (Doc. 50) asking the Court to invoke the prison mailbox rule to find his FAC timely filed. Because the Court is considering the FAC timely filed, any

requests by Plaintiff are moot.

Plaintiff filed "Plaintiff's Evidentiary Proffers of Ongoing Actionable Admin. Remedies Obstructions & Futilities, and Ongoing Deliberate Court Access Obstructions & Actionable Conditions of Confinement" (Doc. 53). Plaintiff attaches documentation which he alleges shows that the grievance process is futile and supports his filing of additional lawsuits. The documentation appears to relate to Plaintiff's diet, disciplinary reports, showers, library requests, and Plaintiff's property. Plaintiff asks the Court to convene a tele-conference video hearing.

Plaintiff also filed a "Motion for Orders/Emergency Injunctive Relief From Medical Denials & Subjected to Ongoing Imminent Dangers of Serious Physical Injuries" (Doc. 54), notifying the Court that his appointment to see the doctor on February 3rd was rescheduled until February 4th and then rescheduled again to a later date. Plaintiff alleges that he was scheduled to see the doctor to document his peanut allergy and to resolve his keep on person ("KOP") status for his heart medication. Plaintiff also alleges that he had the flu on February 7, 2020, and requested a Tamiflu shot, but was denied medical attention. Plaintiff then lists the dates on which he was served peanut butter, and alleges he was served shredded chicken for dinner for seven straight days. Plaintiff seeks injunctive relief in the form of a court order directing that his heart medication be KOP; that he no longer be given peanut products or otherwise served meals deviating from his "Renal II-Increased Protein/3 Hot Meals daily medical diet"; and that he be given medical attention for the flu.

Plaintiff's motions at Docs. 53 and 54 were filed in all three of his pending cases.[1] In *Lynn v. Unit Manager Hackney*, Case No. 20-3048-JTM, the Court addressed both motions and found them "largely unrelated" to the underlying claims in the case. The Court denied the

---

[1] Plaintiff filed the same motion in two additional cases he has pending: Case No. 20-cv-3046-KHV and Case No. 20-cv-3048-JTM.

motions, noting they were unexhausted claims unrelated to his claims in the complaint. This Court denies the motions for the same reason. The Court has previously noted in this case that "Plaintiff has a history of initiating actions and utilizing them as a means of seeking relief for daily on-going grievances instead of prosecuting his underlying claims." November 13, 2019 Order to Show Cause, Doc. 42, at 5 (citing *see, e.g., Lynn v. McCurrie*, No. 17-3041-JWBKGG (D. Kan.) (filed on March 14, 2017, and dismissed on December 6, 2018, for failure to file a proposed second amended complaint as ordered by the court)).

On February 18, 2020, Plaintiff filed "Plaintiff's Verified Motion for Emergency Hearings for Protective Orders & Urgent Referral to the Kansas U.S. Atty.'s Ofc. for Investigation & Criminal Prosecutions or Appointment of Special Master & Issuance of a TRO/Preliminary Injunction" (Doc. 55).[2] Plaintiff again asks the Court to conduct a hearing and to appoint a special master regarding his conditions of confinement. Plaintiff alleges that he was threatened by CO1 Beardsley and his legal files were destroyed on February 14, 2020, in retaliation for Plaintiff's complaints. Plaintiff alleges that this caused him to suffer a "severe cardiac event" which required medical attention and four nitro tablets. Plaintiff seeks injunctive relief in the form of an order prohibiting contact with Plaintiff by CO1 Beardsley, CS1 R. Smith, CS1 Richards, and CO1 Mesmer. Plaintiff also alleges that other plaintiffs will be coming forward to pursue a class action regarding the conditions at HCF, and that he will be submitting "additional convincing & clear evidence in a follow up pleading tomorrow." The Court is not aware of any other plaintiffs coming forward to pursue a class action, and Plaintiff has not filed additional evidence in a follow up pleading.

---

[2] Plaintiff also filed this motion in all three of his pending cases.

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal. His request is unrelated to the claims in this case, and ordering no contact with various guards would cause an adverse impact on public safety and prison conditions. Plaintiff's motion is denied.

Plaintiff has also filed a Motion for Leave to File Supplemental Complaint (Doc. 57). The motion seeks leave to file a supplemental complaint to add claims "shown by his Complaint filed to the Kansas Bd. of Healing Arts, & states such prosecution is relevant & material to the ongoing actionable claims in this case & in Lynn v. Aramark, et al., #20-cv-3046-KHV." Plaintiff asserts that if his motion is granted, he will present his supplemental suit on the standard 42 U.S.C. § 1983 form. Plaintiff's case has been pending for over one year, and he has filed his original Complaint, a Supplement to the Complaint, and an Amended Complaint. His FAC was filed over a year after he initiated this case. Plaintiff has not shown that justice requires leave to amend. *See* Fed. R. Civ. P. 15(a)(2). Plaintiff has also failed to comply with Local Rule 15.1 which requires "[a] party filing a motion to amend or a motion for leave to file a pleading or other document that may not be filed as a matter of right" to "attach the proposed pleading or other document." D. Kan. Rule 15.1(a)(2). The motion is denied.

**IT IS THEREFORE ORDERED** that Plaintiff's motions (Docs. 49, 53, 54, 55 and 57) are **denied.**

**IT IS FURTHER ORDERED** that:

(1) Officials responsible for the operation of HCF are directed to undertake a review of Plaintiff's claim regarding his medical care on January 24, 2019, and any delay in receiving medical care on that date:[3]

 a. To ascertain the facts and circumstances;

 b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the claim; and

---

[3] The *Martinez* Report shall be limited to this issue.

c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this claim and should be considered together.

(2) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. The report shall be filed within **sixty (60) days** of the date of this Memorandum and Order. The KDOC must seek leave of the Court if it wishes to file certain exhibits or portions of the report under seal or without service on Plaintiff. Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(3) Authorization is granted to the officials of HCF to interview all witnesses having knowledge of the facts, including Plaintiff.

(4) No answer or motion addressed to the FAC shall be filed until the *Martinez* Report required herein has been prepared and filed.

(5) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendant's answer or response to the FAC and the report ordered herein. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED.**

**Dated March 9, 2020, in Wichita City, Kansas.**

**s/ Eric F. Melgren**
**ERIC F. MELGREN**
**U. S. District Judge**