## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**PATRICK C. LYNN,**

       *Plaintiff,*

       v.                           **CASE NO.  19-3003-EFM**

**SAMMY CLINE, et al.,**

       *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff brings this pro se[1] civil rights Complaint pursuant to 42 U.S.C. § 1983.  The Court screened Plaintiff's First Amended Complaint (Doc. 48) and entered a Memorandum and Order (Doc. 84) finding that only Plaintiff's claims regarding his medical care on January 23–24, 2019 survived screening.  (Doc. 84, at 4.)  The KDOC Defendants moved for summary judgment based in part on Plaintiff's failure to exhaust administrative remedies (Doc. 111).[2]  The Corizon Defendants joined in the motion.  (Doc. 118.)  Plaintiff filed his response (Doc. 129) and the Defendants have filed their replies (Docs. 130, 131).  This matter is therefore fully briefed.  Defendants allege that Plaintiff has failed to exhaust his administrative remedies.  The Court agrees and grants summary judgment on Plaintiff's § 1983 claims.

## I.        Uncontroverted Facts

1.  Lynn alleges that on January 24, 2019 the KDOC Defendants did not adequately respond to his reports of chest pains. (*See* Complaint, Doc. 48).

---

[1] The Court is mindful of Plaintiff's pro se status and liberally construes his pleadings and holds them to a less stringent standard than formal pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court does not, however, assume the role of advocate. *Id.*

[2] Defendants also allege Eleventh Amendment immunity.  Because the Court finds that Plaintiff failed to exhaust his available administrative remedies, the Court does not reach the issue of immunity or the merits of Plaintiff's claims.

2.  Lynn alleges he complained to several staff following the January 24, 2019 incident. (Doc. 69–40 at 7–8).

3.  Lynn alleges that on January 30, 2019 he sent a Form 9 and a "special problem grievance" to Hutchinson Correctional Facility attorney Jon Graves and Warden Schnurr.  (Doc. 69–40 at 7).

4.  Lynn alleges that on February 1, 2019 he sent a Form 9 to "EAI Lt. Markus." (Doc. 69–40 at 8).

***Property claims***

5.  Lynn submitted a "Property Damage/Loss or Personal Injury Claim Form" dated January 31, 2019 regarding treatment of his alleged chest pains on January 24, 2019. (Doc. 69–40 at 1–10).

6.  Lynn submitted a second "Property Damage/Loss or Personal Injury Claim Form" dated February 4, 2019 regarding treatment of his alleged chest pains on January 24, 2019. (Doc. 69–40 at 11–12).

7.  Lynn submitted a third "Property Damage/Loss or Personal Injury Claim Form" dated February 4, 2019 regarding treatment of his alleged chest pains on January 24, 2019. (Doc. 69–40 at 13–16).

***Letters routed to the secretary of corrections***

**Letter One**

8.  On March 6, 2019 Lynn submitted a letter to "Chuck Simmons-Interim DSOC" with numerous complaints, including complaints regarding the January 24, 2019 incident. (Declaration of Doug Burris (Doc. 112–1); Exhibit A to Burris Decl. at 2–5).

9. On March 8, 2019 Lynn's letter was returned to him without substantive response because the stated issues were not emergencies, and Lynn failed to show "evidence that [he] attempted to reach

an informal resolution of these matters with the staff [he] work[s] with on a direct or daily basis." (Ex. A to Burris Decl. at 1).

10.  Because Lynn's letter also included medical issues, it was forwarded to the Medical Services Department for review and recommendations from a doctor. (Burris Decl. at ¶ 8; Ex. A to Burris Decl. at 1; Exhibit B to Burris Decl.).

**Letter Two**

11.  On March 4, 2019 Lynn submitted a letter to Governor Laura Kelly with numerous complaints, including complaints regarding the January 24, 2019 incident.  (Ex. A to Burris Decl. at 7–10).

12.  On March 14, 2019 Lynn's letter was returned to him without substantive response because the stated issues were not emergencies and "[t]hese issues can be handled at the facility by using the grievance procedure properly, including obtaining a Warden's response before [he] appeal[s] to the Secretary of Corrections."  (Ex. A to Burris Decl. at 6).

**Letter Three**

13.  On March 7, 2019, Lynn submitted a letter to Sheriff Henderson and "Reno Co. D.A. Schroeder" with numerous complaints, including complaints regarding the January 24, 2019 incident.  (Ex. A to Burris Decl. at 12–15).

14.  On March 13, 2019 Lynn's letter was returned to him without substantive response because the stated issues were not emergencies, and Lynn failed to show "evidence that [he] attempted to reach an informal resolution of these matters with the staff [he] work[s] with on a direct or daily basis."  (Ex. A to Burris Decl. at 11).

***Appeals to the warden and secretary of corrections***

15.  Lynn did not submit a grievance to the warden about the January 24, 2019 incident.  (Affidavit of Elizabeth Smith, Doc. 69–27 at ¶ 3).

16.  Lynn did not appeal a grievance to the secretary of corrections about the January 24, 2019 incident.  (Burris Decl. at ¶ 9).

## II.     Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.[3]  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law" and is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]  The Court views all evidence and draws all reasonable inferences in the light most favorable to the party opposing summary judgment.[5]  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"[6]

## III.     Analysis

Defendants contend they are entitled to summary judgment because Plaintiff has failed to exhaust his administrative remedies.  An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

---

[3] Fed. R. Civ. P. 56(a) and (c).
[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).
[5] *Pinkerton v. Colorado Dep't. of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009) (citation omitted).
[6] *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).

42 U.S.C. § 1997e(a).[7]  "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."[8]

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it."[9]  An inmate exhausts by complying with "an agency's deadlines and other critical procedural rules."[10]  A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein.[11]  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies."[12]  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."[13]

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies.[14]  The issue

---

[7] *See also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted).
[8] *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).
[9] *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249; *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (quoting *Jones*, 549 U.S. at 211)).
[10] *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).
[11] *Little*, 607 F.3d at 1249 (citing *Woodford*, 548 U.S. at 90).
[12] *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).
[13] *Jones*, 549 U.S. at 218.
[14] *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

of Plaintiff's failure to exhaust his available administrative remedies prior to filing his lawsuit must be determined before reaching the merits of his lawsuit.[15]

For Kansas state prisoners, the administrative remedies require the inmate to seek an informal resolution with personnel who work with the inmate on a daily basis.[16]  If the informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections.[17]  The procedure to follow at each level is described in detail in Kan. Admin. Regs.[18]

Defendants argue that Plaintiff failed to exhaust these available remedies.  Defendants support their argument with an affidavit from Correction Manager Doug Burris.  He attests that he reviewed the records maintained by the KDOC regarding grievances and found no record of Plaintiff filing an appeal to the Secretary of Corrections of any grievance during the relevant time frame.  Because Plaintiff did not complete the KDOC's review process, Defendants contend that Plaintiff failed to exhaust his remedies and that summary judgment is appropriate.[19]

Plaintiff responds that he did exhaust by filing his personal injury claims.  But there are several problems with Plaintiff's argument.  First, Plaintiff's response to Defendants' summary judgment motions does not comply with the federal or local rules.  Plaintiff did not properly respond to Defendants' statement of facts as required by Fed. R. Civ. P. 56(c) and D. Kan.

---

[15] *Little*, 607 F.3d at 1249 ("unexhausted claims cannot be brought in court") (citation omitted); *see also Jernigan*, 304 F.3d at 1032 (an inmate who does not complete the grievance process is barred from pursuing a §1983 claim).

[16] K.A.R. § 44–15–101(b).

[17] K.A.R. § 44–15–101(d).

[18] § 44–15–102; *see also Garza v. Correct Care Solutions*, 2011 WL 2580299, at *2 (D. Kan. 2011), *aff'd* 451 F. App'x 775 (10th Cir.) (granting summary judgment for failure to exhaust claims against Correct Care Solutions where plaintiff failed to allege that he sought relief on his claims first through his unit team, then the warden, and finally from the Secretary of Corrections).

[19] *See Jernigan*, 304 F.3d at 1032 (holding an inmate failed to exhaust his administrative remedies when he did not complete all three required written steps).

Rule 56.1(b)(1). Plaintiff's pro se status does not excuse his noncompliance especially because Defendants complied with D. Kan. Rule 56.1(f) and sent Plaintiff the required notice for motions for summary judgment. Thus, the Court deems Defendants' facts admitted and disregards Plaintiff's unsupported and procedurally improper factual contentions.[20] On the properly supported and not genuinely disputed record, Plaintiff has not shown a triable issue about exhaustion.

Second, even if the Court excused Plaintiff's noncompliance, Plaintiff still fails to create a genuine issue of material fact. He argues that he exhausted his administrative remedies because he filed a personal injury claim.[21] (Doc. 129–1, at 2–3.)

As this Court has previously found, there are two distinct avenues of administrative exhaustion established in Kansas law:

> The first avenue is found in the regulations codified by Article 15 of chapter 44 of the Kansas Administrative Regulations. These regulations govern inmate grievances covering "a broad range of matters that directly affect the inmate, including" complaints about policies and conditions of imprisonment, actions of employees and other inmates, and incidents occurring within the facility. Kan. Admin. Regs. § 44–15–101a(d)(1)(A)–(B). As the Court previously determined, this regulation applies to a constitutional claim such as the one asserted here, where the conduct complained of stems from "actions by employees" of the prison facility. *Id.* § 44–15–101a(d)(1)(B).[22]

 "The second avenue is governed by the regulations in Article 16 of chapter 44 of the Kansas Administrative Regulations."[23] Kan. Admin. Regs. § 44–16–104a applies to claims for personal injury and provides: "(a) Each inmate claim for personal injury shall be submitted to the [prison]

---

[20] *Canady v. Gen. Motors Corp.*, 368 F. Supp. 2d 1151, 1155 (D. Kan. 2004).
[21] Plaintiff's response (Doc. 129–1) also sets forth arguments relating to the merits of his claims and regarding an incident occurring the week prior to filing his response. These arguments are irrelevant to the issue of exhaustion.
[22] *Lewis v. Carrell*, 2015 WL 413640, at *2–3 (D. Kan. 2015).
[23] *Id.* at *3.

facility and [the] secretary of corrections within 10 calendar days of the claimed personal injury."[24]

The Kansas Court of Appeals has explained that the two sets of regulations found in Articles 15 and 16 are "separate and distinct" from one another.[25]  Indeed, the regulation "expressly provides: 'The grievance procedure [in article 15] shall not be used in any way as a substitute for, or as part of, the  . . . property loss or personal injury claims procedure [in Article 16] . . .'"[26]

The Court in *Conley* addressed defendants' argument that plaintiff failed to file a personal injury claim in a § 1983 case, and noted that while case law establishes that exhaustion of Article 15's procedures alone is not sufficient for a plaintiff to assert a personal injury claim, the Court "had not located any authority requiring an inmate to exhaust both the requirements of Article 15 and Article 16 before asserting a § 1983 claim based on an alleged violation of an inmate's constitutional rights" and declined to invent such a requirement.[27]  However, the Court did find that exhaustion under § 44–15–101 was necessary for plaintiff's § 1983 claim.[28]  The Court found that where plaintiff asserted a § 1983 claim for failure to provide proper dental care, plaintiff's claim constituted a complaint about the conditions of his imprisonment and the actions of employees, which requires exhaustion under Kan. Admin. Regs. § 44–15–101.[29]  Likewise, the Court in *Nunez*, stated that "an inmate who wishes to pursue both a personal injury claim and a § 1983 claim must comply with two distinct sets of administrative procedures even if he bases his

---

[24] *Id*. (citing Kan. Admin. Regs. § 44–16–104a).
[25] *Id*. (citing *Redford v. Kan. ex rel. Dep't of Corr.*, 295 P.3d 1054, 2013 WL 781102, at *6 (Kan. Ct. App. Mar. 1, 2013 (unpublished table decision)).
[26] *Id*. (quoting Kan. Admin. Regs. § 44–15–101a(d)(2); *see also Sharrock v. Stephens*, 2011 WL 5526444, at *1 (D. Kan. 2011) ("Importantly, the requirements in [§ 44–16–104a] apply regardless of whether the inmate pursues a grievance pursuant to § 44–15–101.").
[27] *Conley v. Pryor*, 2015 WL 413638, at *14 (D. Kan. 2015).
[28] *Id*.
[29] *Id*.

claims on a single act."[30]  The Court held that "Article 15 of the KDOC regulations covers the administrative procedures that must proceed a § 1983 claim."[31]

Plaintiff failed to follow the proper grievance procedures despite being advised of the deficiencies in his letters and the responses by Doug Burris advising him how to correctly grieve the issued raised in his letters under Article 15.  Nothing suggests that the Article 15 procedures were unavailable to Plaintiff, he just failed to use them.  Furthermore, Plaintiff's personal injury claims were insufficient to properly exhaust his § 1983 claims.

### IV.    Conclusion

Defendants are entitled to summary judgment in their favor because Plaintiff failed to exhaust his available administrative remedies prior to filing suit.  The case is dismissed without prejudice.

**IT IS THEREFORE ORDERED** that Defendants' Motions for Summary Judgment based on failure to exhaust (Docs. 111 and 118) are **GRANTED.**

**IT IS FURTHER ORDERED** that to the extent Plaintiff requests the appointment of counsel and appointment of a special master (Doc. 129) and seeks spoliation sanctions (Doc. 129–1), those requests are moot and therefore **DENIED.**

---

[30] *Nunez v. Heimgartner*, 2017 WL 2264466, at *5 (D. Kan. 2017) (citation omitted).
[31] *Id*. at *6 (citation omitted); *see also Jones v. Parks*, No. 19-cv-3175-HLT-GEB, Doc. 50 at n.3 (D. Kan. April 13, 2021) ("Plaintiff's alleged personal injury claims based off the same incidents does not exhaust his § 1983 claim.").

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED**.

**Dated this 25th day of May, 2021, in Wichita, Kansas.**


_Eric F. Melgren_

**ERIC F. MELGREN**
**U. S. District Judge**